UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SONIA PERRY,                                      **COMPLAINT**

                                                  **25 cv 2914**

                                                  **ECF Case**
                    Plaintiff,
          vs.

The CITY OF NEW YORK,
ROBERT MCLOUGHLIN, BENJAMIN GELBER,
DENNIS COBIC, ANNIE COSGRAVE,                     **JURY TRIAL DEMANDED**
in their individual and official capacities,

                    Defendants.
---------------------------------------------------------------x

Plaintiff Sonia Perry, by her attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from various civil rights violations against Sonia Perry ("Plaintiff" or "Ms. Perry") by New York City police officers. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest, malicious prosecution, excessive force, failure to intervene, supervisory liability, and a *Monell* claim against the City of New York for the same constitutional violations. Additionally, Plaintiff asserts analogous claims under New York State and New York City Law against the individual defendants, and against the City of New York under the doctrine of *respondeat superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state, municipal, and federal civil rights law.

1

**JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all non-federal claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

**VENUE**

4. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

**JURY DEMAND**

5. Plaintiff respectfully demands a trial by jury on each and every one of her claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

6. The individually named defendants, Detective Robert McLoughlin (Tax ID # 943554), Benjamin Gelber (Tax ID 945754), Dennis Cobic, and Annie Cosgrave (collectively, the "individual defendants"), are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the NYPD 112th Precinct.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

10. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident. At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

11. This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

12. On March 27, 2024, around 12 pm, Plaintiff was walking her dog (a Miniature Australian Shepherd named Logan) around 97-01 Queens Boulevard in Queens, New York.

13. When Plaintiff noticed a defective handicap parking plaque on a parked vehicle, she approached two police officers (Defendant Officers Cobic and Cosgrave) who were nearby.

14. Officer Cosgrave appeared to recognize Plaintiff and made a phone call, and soon afterwards several additional police officers arrived on the scene, including Lieutenant Benjamin Gelber, who was wearing a white shirt.

15. The officers informed Plaintiff that she was going to be arrested, frisked her, seized her dog, and handcuffed her tightly behind her back (Arrest # Q24613912), causing pain and distress.

16. When Plaintiff asked why she was being arrested, the officers told her it was for "assault" and that the detective at the precinct would give her more details.

17. Unbeknownst to Plaintiff, there was an open NYPD Investigation Card (Number 2024016183), or "i-card," designating Plaintiff a "suspect"; this i-card was issued because a man named Nejat Sadaat had accused Plaintiff of punching and threatening him on March 14, 2024.

18. Even though the i-card was a "suspect only" i-card – which meant the NYPD was not authorized to arrest or detain her – Lieutenant Gelber instructed his subordinate officers to "take her."

19. Plaintiff pleaded with her arresting officers to handle her dog Logan carefully, to which she received the officers' mockery and indifference.

20. While Plaintiff was being transported to the precinct, the officers handling her dog lost control and allowed Logan to run across Queens Boulevard (and then an additional four blocks to Plaintiff's home).

21. While in handcuffs, Plaintiff repeatedly complained about the tightness of her handcuffs and the pain and pressure it was causing in her arms, wrists, and lower back.

22. The officers who arrested Plaintiff and transported her to the 112th Precinct – including Defendants Dennis Cobic and Annie Cosgrave – ignored Ms. Perry's pleas to loosen or adjust the handcuffs and further ignored her statements that she had a pre-

existing injury in her back, causing Plaintiff to suffer a herniation of a disc in her back and an exacerbation of her physical condition.

23. When Plaintiff was transported to the 112th Precinct, she was fingerprinted, photographed, deprived of her belongings, detained in a holding cell, then taken upstairs to the Detective Squad where she remained for hours in another holding cell.

24. Feeling a significant drop in blood pressure, weak and afraid of losing consciousness and being hospitalized, Plaintiff asked for food and water, and was given a peanut butter and jelly sandwich.

25. Detective Robert McLoughlin appeared in the Detective Squad and informed Plaintiff that there was a "warrant" for her arrest because of an accusation made by Nejat Sadaat.

26. Plaintiff explained how Mr. Sadaat was a vindictive man with a vendetta against her family, a violent man who had been arrested for threatening and assaulting Plaintiff's mother, Esther Perry; Plaintiff further explained to Detective McLoughlin how Sadaat was a vengeful man embroiled in civil litigation against Plaintiff and her mother over management of the apartment building where Plaintiff, her mother, and Mr. Sadaat's two sisters resided. Plaintiff explained Mr. Sadaat's longstanding animus towards her, his ill will and violent behavior, and his various motivations for falsely accusing her of assault and menacing.

27. Detective McLoughlin stated that he was aware of the ongoing strife between Sadaat and Plaintiff's family.

28. Detective McLoughlin further explained that Mr. Sadaat had accused Plaintiff of punching him in the chest, on the afternoon of March 14, 2024, in front of her home (64-57 Wetherole Street in Queens), thereby causing his lungs to "collapse."

29. Plaintiff firmly denied this accusation, pointing out its incongruence and absurdity (Plaintiff was clearly smaller and weaker than Mr. Sadaat), and offering to show proof in the form of receipts, surveillance videos, and witnesses that accounted for her whereabouts throughout the timeframe of this alleged assault, and thereby proved her innocence.

30. Detective McLoughlin apologized to Ms. Perry, saying something to the effect of: "I'm sorry for the inconvenience. I was at a barbecue and didn't investigate this accusation."

31. Despite receiving every indication that Sadaat's accusation was false and malicious, and that Ms. Perry was demonstrably innocent, Detective McLoughlin made it clear that he had no choice but to follow through with his arrest of Ms. Perry because of Mr. Sadaat's accusation; the matter was, he said, "now in the court's hands."

32. Detective McLoughlin failed to use any common sense or critical scrutiny in assessing Mr. Sadaat's accusation, particularly when faced with Plaintiff's truthful, verifiable, and compelling denial.

33. Rather than further question Mr. Sadaat or speak with Mr. Sadaat's sisters (whom Mr. Sadaat claims he was visiting when he was assaulted), or pursue the various forms of evidence of innocence that Plaintiff could readily make available, Detective McLoughlin informed Plaintiff that she would remain locked up and be criminally prosecuted for assaulting Mr. Sadaat.

34. Detective McLoughlin forwarded Sadaat's false accusations to the Queens County District Attorney's Office, and transported Plaintiff to Queens County Central Booking where she awaited her criminal court arraignment.

35. Plaintiff was finally arraigned on Docket Number CR-010250-24QN, charged with assault in the third degree and harassment in the second degree under the New York Penal Law.

36. The arraignment judge released Plaintiff without bail (but on supervised release), ordered Plaintiff to appear in Queens County Criminal Court on a future date, and further ordered Plaintiff to abide by a temporary order of protection against her in favor of Sadaat during the pendency of the prosecution.

37. Plaintiff paid a private criminal defense attorney (Chris Graziano) to represent her.

38. After numerous required court appearances, the prosecution against Plaintiff was dismissed and sealed on December 10, 2024.

39. As a result of the herniated disc in her back, caused by the excessively tight handcuffs, Plaintiff has received numerous forms of treatment, including steroids, injections, physical therapy, and various prescription drugs. The pain she has experienced since her arrest has been so severe it has impaired her ability to walk.

40. After her prosecution was dismissed, Plaintiff, who has suffered from post-traumatic stress disorder as a consequence of her arrest and prosecution, has expended considerable time and resources to ensure that Sadaat is held accountable for his malicious and mendacious accusation against her; she has asked the 112th Precinct specifically to investigate Sadaat for falsely accusing her and damaging her, and has

7

provided proof to ranking officers at the precinct showing that Sadaat's accusations were demonstrably false.

41. Nobody in the 112th Precinct or elsewhere in the NYPD has shown any interest or effort to hold Sadaat accountable for falsely accusing Plaintiff and getting her arrested and prosecuted; despite the damage this false accusation inflicted upon Plaintiff, Sadaat has faced zero consequence for falsely accusing Plaintiff of assaulting and threatening him.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

42. All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and scope of their duties.

43. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

44. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

**FAILURE TO TRAIN AND SUPERVISE**

45. Upon information and belief, the individual defendants' aforementioned abuse of power was not an isolated event. There were other instances of misconduct by the individual defendants that Defendant City knew or should have known about.

46. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

**THE NYPD'S CUSTOM OF ARRESTING ACCUSED CIVILIANS WITHOUT ADEQUATE INVESTIGATION**

47. Although Detective McLoughlin knew, and had every reason to know, that Plaintiff was innocent and the subject of a malicious, mendacious, ill-motivated accusation by Sadaat, he arrested Plaintiff anyway in accordance with the NYPD's widespread custom and practice of arresting innocent civilians without adequate investigations simply because other civilians level criminal accusations against them – as if a mere accusation were sufficient to justify an arrest.

48. Arresting officers frequently admit or imply as much when they tell arrestees: "They said you assaulted them, so *we have to arrest you*," and "Our job is to arrest you and let the courts figure it out."

**DAMAGES**

49. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

      a. Violation of her constitutional rights under the Fourth Amendment to the United States Constitution;

      b. Loss of Liberty

      c. Severe emotional distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

### False Arrest Under Section 1983

50. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

51. By the actions described above, the individual defendants deprived Plaintiff of her Fourth Amendment right to be secure in her person against unreasonable searches and seizures, specifically her right to be free from false arrest.

52. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

53. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SECOND CLAIM

### Malicious Prosecution Under Section 1983

54. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

55. By the actions described above, Defendants deprived Plaintiff of her Fourth Amendment right to be secure in her person against unreasonable searches and seizures, specifically her right to be free from malicious prosecution.

56. As detailed above, the individual defendants intentionally and maliciously initiated a criminal prosecution against Perry without probable cause – a prosecution that terminated in Plaintiff's favor when all criminal charges against her were dismissed.

57. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### THIRD CLAIM

### Excessive Force Under Section 1983

58. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

59. By the actions described above, the individual defendants deprived Plaintiff of her Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically her right to be free from excessive and unreasonable force.

60. As a direct and proximate result of aforementioned conduct of the defendant officers, Plaintiff sustained the damages and injuries hereinbefore alleged.

### FOURTH CLAIM

### Failure to Intervene Under Section 1983

61. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

62. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by other law enforcement officers.

63. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of her constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

64. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Supervisory Liability

65. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

66. Defendant Benjamin Gelber, as the Lieutenant supervising the arrest of Plaintiff, directly participated in the violations of Plaintiff's constitutional rights by ordering and authorizing Plaintiff's arrest.

67. At a minimum, Lieutenant Gelber was grossly negligent in supervising his subordinate officers as they committed the constitutional wrongs of false arrest, malicious prosecution, and excessive force upon Plaintiff.

68. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Municipal Liability Under Section 1983

69. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

70. By the actions described, the Defendant City deprived Plaintiff of her Constitutional rights through the NYPD's custom and policy of making arrests based purely on civilian accusations without adequate investigations.

71. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the damages and injuries hereinbefore alleged.

### PENDENT STATE CLAIMS

## FIRST CLAIM

### False Imprisonment under N.Y. State Law

72. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

73. The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

74. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Malicious Prosecution Under N.Y. State Law

75. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

76. As detailed above, the individual defendants intentionally and with actual malice initiated a prosecution against Plaintiff without probable cause. The prosecution terminated in Plaintiff's favor when all charges against her were dismissed.

77. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Battery Under N.Y. State Law

78. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79. As detailed above, the individual defendants intentionally subjected Plaintiff to offensive and harmful contact.

80. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Trespass to Chattels Under N.Y. State Law

81. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

82. As detailed above, the individual defendants intentionally and physically interfered with Plaintiff's use of her personal property, namely, her dog.

83. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Right of Security Against Unreasonable Search and Seizure and Excessive Force Under New York City Administrative Code

84. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

85. As detailed above, the individual defendants intentionally violated Plaintiff's right to be secure against unreasonable searches and seizures, and against excessive force, in violation of New York City Administrative Code Title 8, Chapter 8: The Right of Security Against Unreasonable Search and Seizure and Against Excessive Force Regardless of Whether Such Force Is Used In Connection with a Search or Seizure. § 8-803 Civil action for deprivation of rights.

86. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

87. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

88. Defendant City owed a duty of care to Plaintiff to prevent the violations and abuse sustained by Plaintiff.

89. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

90. Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

91. Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

92. As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## SEVENTH CLAIM

**Respondeat Superior Under N.Y. State Law**

93. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

94. Defendant City is the employer of the individual defendants.

95. Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment.

96. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a. An order awarding compensatory damages for Plaintiff Sonia Perry in an amount to be determined at trial;

b. An order awarding punitive damages in an amount to be determined at trial;

c. An order enjoining and directing Defendant City of New York to establish proper rules and procedures for arresting individuals based purely on civilian accusations.

d. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

e. Such other and further relief as this Court may deem appropriate.

DATED:   May 23, 2025
         New York, New York

_____
CYRUS JOUBIN, ESQ.
43 West 43rd Street, Suite 119
New York, NY 10036
347-349-0724
joubinlaw@gmail.com
Attorney for Sonia Perry